*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WESTFIELD INSURANCE COMPANY,

        Plaintiff/Counterdefendant-Appellant,

v

BRITTNEY COLE, LYLE WILSON, and TAMIKA
WILLIAMS,

        Defendants/Counterplaintiffs/Cross-
        Plaintiffs-Appellees,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY[1] and BRANDON
JAMAL YOUNG,

        Cross-Defendants-Appellees.

UNPUBLISHED
December 3, 2020

No. 347713
Washtenaw Circuit Court
LC No. 17-000648-NF

Before: JANSEN, P.J., and FORT HOOD and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this first-party no-fault insurance action, plaintiff, Westfield Insurance Company, appeals by leave granted[2] the trial court's order granting partial summary disposition pursuant to MCR 2.116(C)(10) in its favor against defendants, Brittney Cole, Lyle Wilson, and Tamika Williams. We reverse and remand with instruction to the trial court to grant summary disposition

---

[1]Modified from Michigan Assigned Claims Plan to Michigan Automobile Insurance Placement Facility, pursuant to trial court's March 2, 2018 order of substitution of parties.

[2] *Westfield Ins Co v Cole*, unpublished order of the Court of Appeals, entered July 25, 2019 (Docket No. 347713).

to plaintiff in its entirety as it pertains to defendants Cole and Wilson, but to more fully explore a balancing of the equities as it pertains to Defendant Williams.

## I. FACTUAL BACKGROUND

This declaratory action arises out of plaintiff's rescission of an insurance policy that otherwise would have provided coverage for two motor vehicle accidents that occurred on April 11, 2017, during which Williams, Cole, and Wilson were injured.

On April 7, 2017, Cole and Wilson went to the J.P. McKeone Insurance Agency, an independent agency not owned or operated by plaintiff, to obtain insurance for a 2006 Dodge Charger and a 2007 Ford Crown Victoria. Only Cole was the named insured on the policy. The insurance application contained a section titled, "Auto Eligibility Questions." The box was marked next to the statement that "[n]one of the Auto Eligibility Questions are applicable." The fourth statement in the section was: "An insured vehicle is not solely owned by and registered to the applicant (other than encumbrances, trusts or leases)." The insurance application also contained a declaration from the applicant that the information provided in the application was true:

> APPLICANT'S STATEMENT: I have read the above application and any attachments. I declare that the information provided in them is true, complete and correct to the best of my knowledge and belief. This information is being offered to the company as an inducement to issue the policy for which I am applying.

The application further included the statement that in "making this application for insurance, it is understood that as a part of our underwriting procedures, an investigative consumer report containing driving record information may be obtained for each driver in the household." Cole signed the application.

Cole later asserted that she told the insurance agent that Wilson was to be on the policy, that Wilson should also be a covered driver, and that she was not the sole owner of either car. Wilson noted that she showed the agent both titles of the vehicles, which demonstrated that Cole was not the sole owner of either vehicle. Cole stated that the agent "was supposed to put" Wilson on the application, that the agent had asked Cole to return on April 10, 2017, so that he could add Wilson as a driver of the vehicle, but that she got in the car accident and was not able to make it back.[3] In reliance on the representations in the application for insurance, plaintiff issued policy number WNP 5520261, providing coverage for both vehicles.

Three days after obtaining the insurance, Cole loaned her Ford Crown Victoria to Williams, who lost control of the vehicle on wet pavement. Wilson was a passenger in the car at the time. Upon learning of the crash, Cole drove her Dodge Charger to the scene. She parked on the shoulder of the highway. Another driver, Brandon Jamal Young, also hit the wet pavement, lost control of his vehicle, and rear-ended the Charger.

---

[3] Defendants got into the car accidents on Tuesday, April 11, 2017, one day after Cole testified that she was "supposed to" return to the insurance agent to add Wilson to the policy.

In the course of investigating the accidents, plaintiff discovered that Wilson had been living with Cole since at least 2011, and was living with her at the time of the accident. Cole testified to the same. Cole further admitted that the insurance application was incorrect because it reflected that she was the sole owner of the Dodge Charger and the Ford Crown Victoria. Plaintiff obtained information from the Michigan Secretary of State's Office showing that the vehicles were not solely owned by or registered to Cole, and that contrary to Cole's representations in her application for insurance, the Crown Victoria was co-owned by Cole with Wilson and the Dodge Charger was co-owned by Cole with her mother. Additionally, both Cole and Wilson admitted that, although the application did not list Wilson as a driver of either vehicle, he frequently drove both vehicles. Plaintiff obtained Wilson's driving record from the Michigan Secretary of State's Office, which indicated that Wilson's driving status was listed as "ineligible."[4]

With the above in mind, plaintiff sought declaratory relief in the trial court to rescind the insurance agreement. Plaintiff's Master Underwriter submitted an affidavit stating that, had the true facts been known, plaintiff would not have issued the policy:

> That if these facts had been made known to [plaintiff] at the time of the application, [plaintiff] would not have issued policy number WNP 5520261, as our underwriting guidelines, approved by the State of Michigan, do not permit the insuring of motor vehicles owned by and available for the use of individuals who are ineligible to possess a Michigan Driver's License.

Additionally, plaintiff's insurance policy included a fraud section allowing plaintiff to void coverage under certain circumstances, specifically stating that the "insurance was issued in reliance on the information provided in [the] insurance application;" that plaintiff "may void coverage under [the] policy if [an applicant] or an insured . . . knowingly concealed or misrepresented any material fact or circumstances, or engaged in fraudulent conduct, at the time application was made for insurance or at any time during the policy period;" that plaintiff "may void [the] policy for fraud or material misrepresentation even after the occurrence of an accident or loss[,] . . . mean[ing] that [plaintiff] will not be liable for any claims or damages which would otherwise be covered;" and that if plaintiff voided the policy, "it shall be void from its inception as if this policy never took place." Plaintiff moved for summary disposition under MCR 2.116(C)(10), arguing that no genuine issue of material fact existed regarding its ability to rescind the policy based upon the numerous misrepresentations and omissions committed by Cole during the application process.

The trial court granted plaintiff partial summary disposition, concluding that Cole made a material misrepresentation in her application because the cars were not solely owned by and registered to her, holding as a matter of law that plaintiff would not have issued the policy as to the Ford Crown Victoria because it was co-owned by Wilson. The trial court did not conclude the same as to the Dodge Charger, however, noting that it could not find as a matter of law that plaintiff

---

[4] The report from the Michigan Bureau of Driver and Vehicle Records obtained by plaintiff reflected that, as of May 8, 2017, Wilson's driving status was "ineligible."

would have refused to insure the Charger. The court therafter ordered reformation of the insurance policy to rescind coverage for the Crown Victoria but not for the Charger.

On appeal, plaintiff contends that the material misrepresentations made in the application for insurance rendered the policy voidable in its entirety with respect to Cole and Wilson. However, plaintiff concedes that this matter should be remanded for the trial court to determine whether rescission of the contract is appropriate as to Williams, who was by all accounts, innocent of the misrepresentations made by her codefendants. We agree.

## II. ANALYSIS

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "All well-pleaded allegations are viewed in the light most favorable to the nonmoving party unless documentary evidence is provided that contradicts them." *Hakslouto v Mt Clemens Regional Med Ctr*, 500 Mich 304, 309; 901 NW2d 577 (2017). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Zaher*, 300 Mich App at 139 (quotation marks and citations omitted). This Court also reviews de novo issues involving equitable principles, such as arguments for rescission. *Kaftan v Kaftan*, 300 Mich App 661, 665; 834 NW2d 657 (2013).

A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher*, 300 Mich App at 139 (quotation marks and citations omitted). This Court has also held that courts "may not resolve factual disputes or determine credibility in ruling on a summary disposition motion." *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004).

"[A]n insurer has a reasonable right to expect honesty in the application for insurance . . . ." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 407; 919 NW2d 20 (2018), citing *Jacobs v Queen Ins Co*, 183 Mich 512, 520; 150 NW 147 (1914) (noting that "a contract of insurance is one in which the utmost good faith is required of the insured").

> A "representation" in the law of insurance, is an oral or written statement by the insured or his authorized agent to the insurer or its authorized agent, made prior to the completion of the contract, giving information as to some fact or state of facts with respect to the subject of the insurance, which is intended or necessary for the purpose of enabling the insurer to determine whether it will accept the risk, and at what premium. [*Keys v Pace*, 358 Mich 74, 82; 99 NW2d 547 (1959) (quotation marks and citation omitted).]

A statement in an application for insurance is material if it affects the insurance provider's acceptance of the risk or the hazard assumed by the insurer; said another way, a misrepresentation is material if the insurer would have rejected the risk or charged an increased premium and not

have issued the same contract had it been given the correct information. *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 255, 261; 632 NW2d 126 (2001).

"It is the well-settled law of this state that where an insured makes a material misrepresentation in the application for insurance, including no-fault insurance, the insurer is entitled to rescind the policy and declare it void ab initio." *Lake States Ins Co v Wilson*, 231 Mich App 327, 331; 586 NW2d 113 (1998). Rescission is an appropriate remedy when the contract would not have been made if the particular circumstance had been expected or contemplated. *Rosenthal v Triangle Dev Co*, 261 Mich 462, 463; 246 NW 182 (1933). "Rescission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer. Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *Lake States Ins Co*, 231 Mich App at 331.

Notably, however, our Supreme Court recently reiterated that, "[b]ecause a claim to rescind a transaction is equitable in nature, it 'is not strictly a matter of right,' but is granted only in 'the sound discretion of the court.' " *Bazzi*, 502 Mich at 409, quoting *Amster v Stratton*, 259 Mich 683, 686; 244 NW 201 (1932). With specific respect to no-fault insurance policies, "rescission does not function by automatic operation of the law." *Id*. at 411. "Fraud in the application for insurance" does not "imbue an insurer with an absolute right to rescission of the policy with respect to third parties." *Id*. That is, even where an insurance contract is void ab initio as to certain parties on the basis of the "fraudulent manner in which it was acquired," courts should nonetheless consider within their discretion whether that contract should also be voided as it pertains to innocent third parties. See *Bazzi*, 411-412. Courts should do so on a case-by-case basis in light of a balancing of the equities between the innocent parties. *Id*. at 411.

An automobile insurer may seek to rescind an automobile insurance policy and declare the policy void *ab initio* if that policy was procured through the insured's intentional, material misrepresentation, i.e., fraud. To demonstrate fraud, the insurer must establish with a reasonable degree of certainty: (1) that the insured made a material misrepresentation, (2) that the representation was false, (3) that when the insured made the representation he or she knew it was false or made it with reckless disregard as to its truth or falsity, (4) that the misrepresentation was made with the intent that the insurer would act upon it, (5) that the insurer acted on the misrepresentation, and (6) injury was suffered as a result. *Titan Ins Co v Hyten*, 491 Mich 547, 571-572; 817 NW2d 562 (2012). Upon rescission, "[i]n effect, the insurance policy is considered never to have existed." *Bazzi*, 502 Mich at 408.

First, we conclude that, in keeping with the trial court's factual determinations, plaintiff should have been permitted to rescind its policy as it pertained to Cole and Williams in its entirety. The policy was procured through Cole's material misrepresentation: (1) Cole's omission ad misrepresentation were material; (2) the representations were false, as Cole was not the sole owner of either vehicle and Cole testified that she knew Wilson was not on the policy[5]; (3) Cole knew

---

[5] We acknowledge but are not persuaded by Cole's deposition testimony that she provided the vehicles' titles to the independent agent and told him that Wilson drove the vehicles. Cole nevertheless signed the policy acknowledgement that listed her as the sole owner of the vehicles

that she was not the sole owner of the vehicles; (4) Cole made the misrepresentation with the intent that she would obtain insurance, as demonstrated by her signing the insurance application that contained the statement, "This information is being offered to the company as an inducement to issue the policy for which I am applying"; and (5) and (6) plaintiff acted upon the misrepresentation to its detriment by providing insurance where it otherwise would not have according to its underwriting guidelines and for a decreased premium not contemplating the actual risk of providing the insurance. See *Titan Ins Co*, 491 Mich at 555, 571-572.

Moreover, the manner in which the trial court elected to only partially rescind the policy in this case was erroneous. After it concluded that Cole committed fraud in obtaining the policy, the trial court elected to effectively piecemeal the policy on the basis of its finding that there was a question of fact as to whether plaintiff would have provided coverage for the Dodge Charger, but there was no question of fact regarding whether plaintiff would have provided coverage for the Ford Crown Victoria.

Our Supreme Court has made clear that whether a misrepresentation is material with respect to an insurer's right to rescind a contract is determined with reference to *the* policy at issue, and that it would be an error to focus on whether the insurer would have issued *a* policy irrespective of the misrepresentation. *Oade*, 465 Mich at 254. Where the undisputed evidence makes clear that the misrepresentation "would have led the insurer to charge an increased premium, hence a different contract," "the proper materiality question . . . is whether 'the' contract issued, at the specific premium rate agreed upon, would have been issued notwithstanding the misrepresented facts." *Id*. Moreover, MCL 257.520(a) of the motor vehicle code relevantly provides the definition of a motor vehicle liability policy to "mean an owner's or an operator's policy of liability insurance . . . as proof of financial responsibility, and issued . . . by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured." The "owner's policy of liability insurance" "[s]hall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted." MCL 257.520(b). That is, the motor vehicle code provides that multiple vehicles may be covered under one policy.

Likewise, Cole submitted one application for insurance coverage, paid one premium, and was issued one policy, with one policy number, which provided coverage for both of her vehicles. The policy specifically stated that it would be rescinded in its entirety if Cole knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct. Plaintiff further asserted that its underwriting guidelines would not have allowed for it to provide the insurance coverage to Cole because Wilson did not have a valid driver's license. And, even if

---

and the only insured driver. Further, Cole and Wilson both testified at their depositions that they knew Wilson was not a covered driver on the application and that the agent asked them to return to the agency to add him, but that they failed to do so. Lastly, an independent agent is deemed to be an agent of the insured/policy holder and not the insurer. See *Genesee Food Servs v Meadowbrook, Inc*, 279 Mich App 649; 760 NW2d 259 (2008). Therefore, the agent was a representative of Cole, not plaintiff, and any fault of the agent's cannot be construed against plaintiff.

plaintiff, knowing of the correct state of facts, would have issued a policy with an increased premium or issued a policy for coverage only for the Dodge Charger, it would have been a *different* policy. See *Oade*, 465 Mich at 254. Accordingly, the trial court's piecemealing of the policy in this case was erroneous.

Lastly, we agree with plaintiff that, to the extent that the trial court's piecemealing of the policy was partially done on the basis of a balancing of the equities as provided in *Bazzi*, that analysis should not have been applied to Cole and Wilson. Cole and Wilson were not innocent third parties and defendants and cross-defendant make no argument to the contrary. On the other hand, it is undisputed that Williams was an innocent third party in this case, and to that end, we conclude that, while the policy should be considered void ab initio as it pertains to Cole and Wilson, the trial court should further determine within its discretion whether that same result should be equitably applied to Williams. See *Bazzi*, 502 Mich at 411-412.

With all of the above in mind, when viewing the allegations in the light most favorable to defendants, summary disposition against defendants Cole and Wilson is proper because no genuine issue of material fact exists regarding their innocence with respect to the misrepresentations made in this case, nor whether plaintiff would have issued the policy in question had it been aware of the same. However, the trial court should balance the equities as they pertain to plaintiff and Williams, an innocent third party, and determine within its discretion whether plaintiff is entitled to rescind the contract as it pertains to Williams. See *Bazzi*, 502 Mich at 412.

Reversed and remanded for the trial court to grant summary disposition in favor of plaintiff with respect to defendants Cole and Wilson, and to determine whether the same is appropriate with respect to defendant Williams on the basis of the equities. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Amy Ronayne Krause